UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BLAKE GUMM,<br><br>    Defendant. | No. 6:12-CR-01-KKC-HAI-3<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from Chief Judge Caldwell (D.E. 464), the Court considers reported violations of supervised release conditions by Defendant Blake Gumm. This is his third revocation.

**I.**

Judge Thapar entered a judgment against Defendant in August 2016 following a guilty plea to conspiracy to distribute oxycodone. D.E. 213. Defendant was sentenced to 18 months of imprisonment, followed by seven years of supervised release. *Id*. at 2-3. He began his first term of supervised release on May 21, 2013.

Defendant's release was revoked in early 2015 for using hydrocodone. D.E. 370. He was sentenced to one day of imprisonment, followed by 14 years of supervised release. *Id*. He was also ordered to submit a book report and discuss the assigned book at a status conference. *Id*. at 4.

After his release, he faced revocation again in April 2015 for using methamphetamine. D.E. 402. He was sentenced to 21 months of imprisonment, followed by 14 years of supervised

release. *Id*. The Court added a special condition requiring Defendant to complete inpatient substance abuse treatment. *Id*. at 5.

Defendant's most recent release from prison occurred on November 18, 2016. Judge Thapar conducted a teleconference on November 22 in which Defendant asked to undertake the "Swift, Certain, and Fair" program ("the SCF program") instead of the previously-ordered inpatient drug treatment. D.E. 448. The Court granted the motion, removed the condition requiring inpatient substance abuse treatment, and noted that Defendant "may request treatment at any time." *Id*.

Defendant has not requested substance abuse treatment.

At a status conference on December 14, 2016, the Court reviewed the terms of the SCF program. D.E. 449. According to the minutes, Defendant "agreed to the terms" of that program, and the Court noted that if he remained successful on supervision for the next 18 months, the Court would "consider early termination of his term of supervised release." *Id*. The Court ordered a status conference to occur in June 2017. *Id*.; D.E. 450.

On January 11, 2017, Defendant's probation officer questioned him about having contact with a convicted felon, his codefendant Kendra Eldridge. Defendant admitted the unauthorized contact and was given a verbal admonishment.

On June 1, 2017, the United States Probation Office ("USPO") submitted a "Supervised Release Violation Report" ("the Report") that initiated these proceedings. The Report charges four violations. The first two alleged violations concern a urine sample collected from Defendant on May 18, 2017. According to the Report, preliminary testing indicated marijuana. At the time, Defendant denied using any controlled substance. On May 26, Alere Toxicology Services confirmed the positive test result for marijuana metabolite. Thus, based on marijuana

2

use, Violation #1 charges a violation of the condition requiring that Defendant "shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician." This is a Grade C Violation.

Second, in relation to this unauthorized use of a controlled substance, the Report charges Defendant with violating the condition that he not commit another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's prior drug conviction, Violation #2 charges Defendant with conduct that would be a federal crime, that is, possession of marijuana, a Schedule I controlled substance. Such conduct would be a Class E felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

Violations #3 and #4 concern an admission by Defendant on May 30, 2017. On that day, Defendant reported to the Probation Office and was confronted with the positive test results for marijuana related to his May 18 urine specimen. Defendant admitted using a synthetic cannabinoid that he referred to as "spice" prior to submitting the May 18 sample. He stated that although he did not intentionally ingest marijuana, the "spice" may have contained marijuana. Defendant provided another urine sample, and preliminary results indicated marijuana. Defendant denied using any controlled substance subsequent to the May 18 sample.

Violation #3 charges another violation of the condition requiring that Defendant "not purchase, possess, use, distribute, or administer any controlled substance . . . except as prescribed by a physician." This violation, based on Defendant's admitted use of a synthetic cannabinoid, is a Grade C violation.

Relatedly, Violation #4 charges Defendant with violating the condition that he not commit another federal, state, or local crime. Under 21 U.S.C. § 813, "A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I."[1] Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's prior drug conviction, Violation #4 charges Defendant with conduct that would be a federal crime, that is, possession of a synthetic cannabinoid, a controlled substance analogue. Such conduct would be a Class E felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

On June 7, 2017, the USPO issued an Addendum to the Report that charged two additional violations. According to the addendum, Alere Toxicology Services confirmed on June 2 that the urine specimen collected on May 30 tested positive for marijuana metabolite. Further, on June 7, Alere provided a "THCA Interpretation" which indicated that Defendant used marijuana prior to the May 18 collection, and then re-used it prior to the May 30 collection.

Violation #5 in the Addendum charges a violation of the condition that Defendant "not purchase, possess, use, distribute, or administer any controlled substance . . . except as prescribed

---

[1] "Controlled substance analogue" is defined at 21 U.S.C. § 802(32)(A) as:

a substance--

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

by a physician." This violation, based on Defendant's alleged use of marijuana between May 18 and May 30, is a Grade C violation.

Relatedly, Violation #6 charges Defendant with violating the condition that he not commit another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's prior drug conviction, Violation #6 charges Defendant with conduct that would be a federal crime, that is, possession of marijuana, a Schedule I controlled substance. Such conduct would be a Class E felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

## II.

The Court conducted an initial appearance pursuant to Rule 32.1 on June 8, 2017. D.E. 466. Defendant conceded probable cause regarding the alleged violations and waived his right to a preliminary hearing. *Id*. The United States moved for interim detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on June 14, 2017, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 471. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all six violations. Specifically, he told the Court that he used both marijuana and spice prior to providing the urine sample on May 18. He also admitted under oath that he used marijuana again between providing the specimen on May 18 and providing the specimen on May 30. In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). Therefore, for purposes of Rule 32.1 proceedings, Defendant admitted the factual

basis for all six violations as described in the Report and Addendum, meaning that the government established each of them under the standard of § 3583(e).

The parties presented a joint recommended penalty of four months of incarceration, followed by two years of supervised release. The parties also discussed modifying certain previously-imposed release conditions, including discontinuation of the SCF program.

### III.

The Court has evaluated the entire record, including the Report, Addendum, and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to transporting large quantities of oxycodone pills for the purpose of illegal distribution, here a Class C felony. *See* D.E. 209. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1, #3, and #5, and a Grade B violation with respect to Violations #2, #4, and #6. Given Defendant's criminal history

6

category of I (the category at the time of the conviction) and a Grade B violation,[2] Defendant's range, under the Revocation Table of Chapter 7, is four to ten months.

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b), (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's conviction, pursuant to 21 U.S.C. § 841(b)(1)(C), there is no maximum term of supervised release that can be re-imposed.

## IV.

At the final hearing, the parties recommended an agreed term of imprisonment of four months of incarceration followed by 24 months of supervised release.

The government recognized that this recommended term of imprisonment at the bottom of the Guidelines Range looked lenient in light of Defendant's previous revocation term of 21 months. Nevertheless, the government found it appropriate under the current circumstances. According to the government, after Defendant suffered a college football injury, he was prescribed opiate painkillers, which led to addiction, which led to heroin use. And this opiate addiction "wrecked Mr. Gumm's life." Not only has he been in and out of prison since 2012, but his brother died of a drug overdose during Defendant's last term of incarceration. The government believed that Defendant's recent use of marijuana and spice began while he was in prison and that he continued to use these drugs since his release as a way of staving off his opiate addiction and managing depression. The use of marijuana and spice was a "coping mechanism"

---

[2] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

7

for readjusting to life out of prison, dealing with his family tragedy, and staying off opioids "at all costs." In contrast, the government argued, had Defendant been caught using an opiate or meth, the government would have sought the statutory maximum.

Despite his problems with drugs, the government argued that Defendant was young (age 29), intelligent, had a criminal history score of I, had the support of his family, and was capable of working. He was not "a lost cause," and was in some ways "uniquely situated" because many employment avenues are open to him despite his prior drug trafficking conviction.

The prosecutor recalled how, during Defendant's previous revocation term of imprisonment, he had approached Defendant about participating in an anti-drug video the United States Attorney's Office was producing. Defendant was very willing to do so, and played a "prominent role" in the drug prevention video. This was one example of Defendant's potential to "contribute positively to society."

The government argued that two years of supervised release would be adequate because Defendant did not have a long history of violence or trafficking. The government argued that living clean for two years would enable Defendant to "get rooted" in a "productive lifestyle." Although Judge Thapar had imposed an extremely long period (14 years) of supervised release upon the last revocation, the government's position was that there was no current justification for such a lengthy term. Additionally, under the SCF program, Defendant's current term of supervised release could have ended at the conclusion of 18 months.

When asked about Defendant's previous decision to forego inpatient drug treatment, the government responded that inpatient treatment is not the best option for everyone, and that no treatment will work absent Defendant's commitment. The government recommended that

inpatient treatment be offered at the discretion of the USPO, but not that it be a mandatory condition of release.

When asked about the release condition that Defendant complete college (of which twelve credit hours remained) within three years, the government responded that, at this point, the decision to finish college should be Defendant's. The government argued that its goal is to establish two years of a "clean lifestyle." The added pressure of college, the government feared, could create an "additional stressor" that would undermine that goal.

Defense counsel stated that he agreed with everything the prosecutor said. Counsel remarked that, after dealing with Defendant "since day one," Defendant had undergone a remarkable transition from the "horrible" and "pitiful" shape he had once been in. Although Defendant had "lost more than you can imagine," counsel was confident that he would "make it" because he has a "good attitude." So far, counsel argued, Defendant had "beaten" heroin and meth, but was using marijuana and spice as a "buffer" to stay off the harder drugs. Counsel explained that, although Defendant currently had no money for school, he would like to return eventually. However, his prior academic major was criminal justice, and it would not be easy for a convicted felon to obtain a job in that field. Defense counsel did not recommend mandatory inpatient treatment.

Defendant briefly addressed the Court. He said he had no excuse for his drug use, and he was not trying to justify it. He asked the Court to show him some mercy, and said his mother needs him.

## V.

At the outset, the Court notes that Congress does *mandate* revocation in a case of this nature. By statute, the Court must recommend revocation and imprisonment because Defendant

possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (equating use with possession).

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. In light of the unique dynamics of this case, the Court will recommend adopting the jointly recommended penalty.

The nature and circumstances of Defendant's underlying conviction for supplying oxycodone for distribution are serious. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). The drug conspiracy undoubtedly harmed many, but Defendant's participation was driven by his own addiction. And, every time he uses drugs he creates a danger of slipping back into trafficking, which creates a need to deter criminal activity and to protect the public.

Regarding his history and characteristics, Defendant has a category I criminal history. He is a bright young man whose life was derailed after an injury led to an opiate addiction. Although he has often had difficulty taking responsibility for his actions, he did make an effort to help others by participating in the anti-drug video. What looms over these proceedings, however, is Defendant's record of prior violations. This is his third revocation for illegal drug use. Although using marijuana and spice may not seem as serious as using opiates and meth, Defendant simply cannot keep illegally self-medicating. And he must be honest with himself and his probation officer. The Court is also puzzled by Defendant's rejection of inpatient drug treatment following his last revocation.

Regarding the need for training and treatment, the parties have agreed that mandatory inpatient treatment is not warranted. Nevertheless, treatment options will remain available at the discretion of the USPO.

The need to avoid unwarranted sentencing disparities is addressed by a within-Guidelines sentence.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e). As noted, this is Defendant's third violation. Further, the violation resulted from his refusal to admit his marijuana use to his probation officer. Had he owned up to it originally, he would have been penalized under the terms of the SCF program3 rather than facing revocation in this Court. Judge Thapar has treated Defendant very gently, including a one-day term of imprisonment for his first revocation and enrollment in the SCF program after his second, a program that could have gotten him out from under supervision in 18 months. Judge Thapar also granted his request not to attend inpatient drug treatment. The Court has been very accommodating to Defendant, and this exacerbates his breach of its trust.

Although a sentence at the bottom of the Guidelines Range is very unusual for a third violation, it is obvious the lawyers on both sides considered the penalty very carefully.

---

3 At the hearing, the defense did not contend that the reduced SCF penalties should apply.

Defendant is warned that the Court will have little patience for any future violations. Although he will not be ordered to complete college or mandatory inpatient drug treatment, Defendant must occupy himself with something productive so his does not find himself before the Court again.

For the reasons stated above, the Court finds that a sentence of four months, followed by two years of supervised release, is sufficient, but not greater than necessary, to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

## VI.

Several previously imposed conditions need to be modified or removed. The first is Special Condition #15, which requires completion of an inpatient drug treatment program. *See* D.E. 402 at 5. Instead, Special Condition #2 can remain, which requires Defendant to participate in treatment at the discretion of the probation officer.

Second, the Court recommends that Special Condition #14 be modified. D.E. 402 at 5. To ease administrative hassle, instead of permission from "the Court," the condition should require permission from the probation officer before Defendant may fill a prescription.

Third, for reasons previously discussed, the college-completion requirement found in Special Condition #12 should be removed. This condition states that Defendant will not be terminated from supervision unless he graduates college within three years of his release. The parties persuasively argued that this condition placed unwarranted pressure on Defendant during a difficult period of transition.

Fourth, Special Condition #11, requiring a status conference one year after Defendant's release from custody, should be removed. Such additional contact with the Court is not

necessary. In addition, as recommended by the parties, Defendant will no longer be a participant in the SCF program.

## VII.

Based on the foregoing, the Court **RECOMMENDS** revocation with a term of imprisonment of four months, followed by two years of supervised release. The Court also **RECOMMENDS** reimposition of all previous conditions (*See* D.E. 402) except for the four revisions recommended above in Part VI.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Chief Judge Caldwell's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985).

This the 15th day of June, 2017.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge